**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

               **v.**                                   **1:19-CR-420**
                                                 **(FJS)**

**JONATHAN M. CUNEY,**

                              **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY** | **MICHAEL BARNETT, AUSA** |
| James T. Foley U.S. Courthouse | |
| 445 Broadway, Room 218 | |
| Albany, New York 12207-2924 | |
| Attorneys for the United States | |
| **LAW OFFICE OF JOHN L. CALCAGNI, III, INC.** | **JOHN L. CALCAGNI, III, ESQ.** |
| 72 Clifford Street, Suite 300 | |
| Providence, Rhode Island 02903 | |
| Attorneys for Defendant | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendant's motion to suppress evidence obtained from four searches that Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted under the authority of search warrants based on similar affidavits. *See* Dkt. No. 20.

## II. BACKGROUND

On November 20, 2019, a federal grand jury charged Defendant in a one-count

Indictment with possession of a firearm by a prohibited person in violation of 18 U.S.C.

§§ 922(g)(1), 924(a)(2).  *See* Dkt. No. 3.  Specifically, Count 1of the Indictment charged that,

> [o]n or about September 10, 2019, in Rensselaer County in the
> Northern District of New York, the defendant, **JONATHAN M.
> CUNEY**, knowingly possessed in and affecting interstate
> commerce a firearm, that is a Springfield Armory, Model M1A
> SOCOM 16 QCB, .308 cal/7.62x51 mm semiautomatic rifle,
> bearing serial number 396898, after having been convicted in a
> court of a crime punishable by a term of imprisonment exceeding
> one year, as the defendant well knew when he possessed the
> firearm, in violation of Title 18, United States Code, Sections
> 922(g)(1) and 924(a)(2).

*See id.*

The four searches at issue in this case are as follows:

> (1) "the November 12, 2019 search of the townhouse residence of
> Hannah Tryon and her and [Defendant's] two children located at
> 504 Forrest Point Drive, East Greenbush, New York, and including
> garage unit Row B, Garage #G-14, located within the Forrest Point
> Apartments and Townhomes development;" ("East Greenbush
> residence")

> (2) "the November 14, 2019 search of Storage Unit 4020 at Store
> Away Self-Storage in East Greenbush, New York;" ("East
> Greenbush Storage Unit")

> (3) "the November 20, 2019 search of Storage Unit 771 of
> Building A at Evergreen Self Storage in Redway, California;"
> ("Redway Storage Unit") and

> (4) "the search of 16 electronic devices in the custody of the ATF
> Office in Albany, New York, which included seven (7) cell
> phones, two (2) Blackberry devices, a laptop, a flash drive, a
> thumb drive, a digital camera, an SD card, a drone, and a satellite
> messenger, all of which were seized during the November 20, 2019
> search of the [Redway Storage Unit] . . . based on a January 31,
> 2020 search warrant."

*See* Dkt. No. 20-1 at 1-2.

## III. DISCUSSION

### A.      Standard of review

In support of his motion, Defendant argues that the facts on which the ATF agents relied to establish probable cause for issuance of the search warrants were insufficient and stale.  There is, however, no dispute about these facts because they were included in the warrant affidavits. Therefore, "the existence of probable cause is a question of law for the court."  *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (citations omitted).

"To establish probable cause to search a residence, two factual showings are necessary – (1) that a crime was committed, and (2) that there is probable cause to believe that evidence of such crime is located at the residence."  *United States v. Mouzon*, No. 16 CR 284 (CM), 2016 WL 7188150, *2 (S.D.N.Y. Nov. 28, 2016) (citing *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)).  "'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  The magistrate judge must approach those determinations "in a practical way, because 'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'"  *Id.* (quoting [*Gates*, 462 U.S.] at 231-32).  Moreover, "the training and experience of law enforcement agents bear significantly on probable cause determinations. . . . Inferences drawn by law enforcement agents based on facts known to them, the totality of the

circumstances, and their training and experience may all support a probable cause finding. . . ." *Id.* (internal citations omitted).

"With regard to the 'recency' of the information supporting the probable cause determination, the law recognizes 'no bright-line rule for staleness,' *Walczyk v. Rio*, 496 F.3d 139, 162 (2d Cir. 2007), which must instead be evaluated 'on the basis of the facts of each case,' *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)." *Mouzon*, 2016 WL 7188150, at *3. "The principal factors in assessing whether the supporting facts in an affidavit have become stale are 'the age of those facts and the nature of the conduct alleged to have violated the law.'" *Id.* (quoting *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir. 1988) (internal quotation marks omitted)). "Where a supporting affidavit presents 'a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant.'" *Id.* (quoting *Martino*, 664 F.2d at 867).

Finally, "[o]nce a search warrant has issued, the issuing judge's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* (quoting *Gates*, 462 U.S. at 236 (internal quotation marks omitted)); *see also Walczyk*, 496 F.3d at 157 (same). "'"[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of de novo review."'" *Id.* (quoting *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original))). "Thus '"[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."'" *Id.* (quoting [*Smith*, 9 F.3d at 1012] (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965))).

B.      **The searches**

*1. November 12, 2019 search of the East Greenbush residence*

With regard to the search of the East Greenbush residence, ATF Special Agent Sherman stated in his affidavit that there was probable cause to believe that the items sought would be at that location because Defendant appeared to reside there part time and continued to receive mail and shipments there even after he had allegedly moved to California and later to Missouri.  *See* Dkt. No. 20-2, Affidavit of Jason T. Sherman, at ¶ 13.  In addition, although not dispositive, in a prior investigation, which had eventually led to Defendant's arrest and conviction, he had stored a large number of firearms, ammunition and related items at the East Greenbush residence, *i.e.*, "[a] gun safe in the master bedroom contained 2 rifles, a revolver, and .223 caliber ammunition and magazines . . . [and t]he garage unit – Row B, Garage # G-14 -- contained thousands of rounds of mixed ammunition (handgun, rifle and shotgun), revolvers, pistols, shotguns, rifle receivers and silencers, among other items."  *See id.* at ¶ 18c.

Given these facts, particularly the facts that Defendant had lived at the East Greenbush residence until his supervised release was terminated, *see id.* at ¶ 11, continued to visit the residence approximately every 6-8 weeks, *see id.* at ¶ 18a & n.3, had several of his purchases of firearms parts, ammunition and related items shipped to the East Greenbush residence, as well as other locations, *see id.* at ¶ 14, and had asked the UPS Store in Providence, Rhode Island, to forward his mail to the East Greenbush residence, *see id.* at ¶ 13, including a Polymer 80 Glock 26 and Parts shipped to the East Greenbush residence in May 2019, *see id.* at ¶ 14, a mere five months before ATF Special Agent Sherman sought a search warrant for the residence, the Court finds that Magistrate Judge Hummel had ample basis for concluding that there was sufficient probable cause to issue the search warrant to search the East Greenbush residence.  Therefore,

the Court denies Defendant's motion to suppress the evidence that the ATF agents recovered as a result of their search of the East Greenbush residence.

### 2. November 14, 2019 search of the East Greenbush Storage Unit

With regard to the search of the East Greenbush Storage Unit, ATF Special Agent Choi noted in his affidavit that Defendant had rented the East Greenbush Storage Unit "since on or about September 9, 2019, according to [the owner of the Unit]. As of November [2019], he ha[d] been delinquent in payment and the lock to the unit [had] been changed." *See* Dkt. No. 20-3, Affidavit of Special Agent Young Choi, at ¶ 6. Furthermore, by the time ATF Special Agent Choi applied for the search warrant for the East Greenbush Storage Unit, he was aware that Defendant was in federal custody in Arizona and the subject of two federal criminal complaints – one that issued out of the Western District of Missouri charging him with being a felon in unlawful possession of ammunition on September 18, 2019, and one that issued out of the District of Arizona, where Defendant was arrested on November 12, 2019, near Tucson, Arizona, and "found to be in unlawful possession of a Springfield Armory model XD40 pistol, bearing SN# XD381871, and an Anderson Manufacturing model AM-15 rifle, bearing SN# 16296261[.]" *See id.* at ¶ 7.

ATF Special Agent Choi also noted that ATF agents had searched the East Greenbush residence on November 12, 2019, and located "some suspected silencer parts and other items of interest" but had not located "most if any of the firearms parts [discussed in the affidavit], nor any 'ghost guns.'" *See id.* at ¶ 11. In addition, Defendant's former girlfriend and mother of his two children, all of whom still lived in the East Greenbush residence reported that Defendant had

visited East Greenbush in October 2019, and ATF knew he had been there in July and September 2019.  *See id.*

ATF Special Agent Choi also stated that, "[a]s discussed in prior affidavits, ATF has discovered that [Defendant] has, since June 2017, been purchasing firearms parts, ammunition and related items from several online retailers, and having these items shipped interstate to East Greenbush; Willits, California; and the UPS box in Providence, Rhode Island (a city where he formerly maintained a firearms business)."  *See id.* at ¶ 12.  ATF had obtained this purchase information from Defendant's "account at Navy Federal Credit Union, his Yahoo email account [and] some of the retailers themselves[.]"  *See id.*  ATF Special Agent Choi noted that "[t]he last shipment to East Greenbush occurred on or about July 21, 2019, and the last shipment of a firearm-related item to East Greenbush occurred on or about May 19, 2019."  *See id.*

Based on the information contained in his Affidavit, ATF Special Agent Choi stated that "there is probable cause to conclude that records, information and items that constitute evidence, fruits and/or instrumentalities of the aforementioned criminal offenses, as fully described in Attachment A of this affidavit, are located at the [East Greenbush Storage Unit]."  *See id.* at ¶ 16. First, Defendant "appears to have partially resided in East Greenbush, and has received mail and shipments there, including – as recently as May – shipments of firearms parts."  *See id.* at ¶ 16a (footnote omitted).  Second, "[g]iven [Defendant's] strong interest in firearms, and his demonstrated contempt for the law, it is highly likely that he will have firearms, ammunition or firearms parts in storage at the [East Greenbush Storage Unit].  Of note, although [the East Greenbush residence] had plenty of unused storage space, [Defendant] was not storing much contraband there, and yet rented the [East Greenbush Storage Unit] less than a mile away."  *See id.* at ¶ 16b.

With regard to additional probable cause, ATF Special Agent Choi noted, among other things, that "[i]t is common for illegal firearms dealers and manufacturers, and felons, to secret firearms-related contraband and paraphernalia, proceeds of sales and records of transactions in secure locations within their personal property for ready access and to conceal them from law enforcement authorities." *See id.* at ¶ 17b. "Illegal firearms dealers and manufacturers, and felons, may keep any of the above-mentioned items at a residence or location other than their primary residence (e.g. storage locker), to maintain deniability about their ownership of these items and to keep incriminating evidence away from their residence in the event it is searched." *See id.* at ¶ 17e.

Given all of the information that ATF Special Agent Choi provided in his affidavit for the search warrant, Magistrate Judge Hummel's conclusion that there was probable cause to search the East Greenbush Storage Unit was well-founded. Therefore, the Court denies Defendant's motion to suppress the evidence that ATF agents recovered as a result of their search of the East Greenbush Storage Unit.

### 3. November 20, 2019 search of the Redway Storage Unit

With regard to the search of the Redway Storage Unit, as the Government points out, this Court does not have venue over the firearms, ammunition and parts found in this unit, although these items could be swept into relevant conduct at sentencing. *See* Dkt. No. 21 at 12. Nonetheless, ATF Special Agent Withrow's affidavit establishes that, "in or around September 2018, [Defendant] . . . began partially residing in Willits, California[,] . . . changed his mailing address to a P.O. Box in Willits, and he obtained a California driver's license." *See* Dkt. No. 20-4, Affidavit of Special Agent Russell Withrow, at ¶ 22. In addition, he stated that, "since June

2017, [Defendant had] been purchasing firearms parts, ammunition and related items from several online retailers, and having these items shipped interstate to his P.O. Box in Willits, California," as well as other locations. *See id.* at ¶ 23. ATF Special Agent Withrow stated that, based on his training, experience, and the investigation conducted to date, he believed that Defendant's purchase records "establish probable cause to believe that [Defendant] was manufacturing, or conspiring or attempting to manufacture, 'ghost guns.'" *See id.* at ¶ 26. He also noted that, based on his training and experience, he knew "that some of the items purchased by [Defendant], such as 'pistol parts,' are consistent with items that [he has] seen being used to manufacture 'ghost guns.' . . . [and] to make silencers or suppressors, which require registration through ATF's National Firearms Registration and Transfer Record." *See id.* at ¶ 27.

In addition, ATF Special Agent Withrow explained that he believed that an entity that Defendant controlled rented the Redway Storage Unit and that Defendant had been renting storage units through this entity from Evergreen Self Storage since 2018. *See id.* at ¶ 28. According to Evergreen Self Storage, "Triangle Services Group, LLC first leased a smaller-sized (5 by 5 feet) unit from Evergreen, starting on October 23, 2018." *See id.* at ¶ 29. According to Defendant's LinkedIn profile, he is the owner of Triangle Services Group, LLC. *See id.* at ¶ 30. According to that same LinkedIn profile, Triangle Services Group, LLC is "'[i]nvolved in a multitude of projects around the globe in the private military, security and agricultural sectors.'" *See id.* ATF agents do not believe that anyone other than Defendant is affiliated with the company, which maintains an account at Tri Counties Bank, located in Chico, California; and the account opening documents, dated August 22, 2018, list Defendant as the only authorized signatory. *See id.*

Furthermore, ATF Special Agent Withrow stated that, "[w]hen Triangle Services Group, LLC signed a lease document with Evergreen on October 23, 2018, [Defendant] was the person who signed on behalf of the company (writing his name as "John Cuney").  In signing the paperwork, [Defendant] provided a Willits mailing address known to correspond to a P.O. Box in his name and on file with the California Department of Motor Vehicles (and the same P.O. Box receiving shipments of firearms parts, discussed above)."  *See id.* at ¶ 31.  In addition, Defendant provided a phone number, which other agents informed Special Agent Withrow they knew Defendant previously used.  *See id.*

ATF Special Withrow also stated that, on or about November 8, 2019, four days prior to Defendant's arrest in Arizona, "Triangle Services Group, LLC transferred to leasing the [Redway Storage Unit], which is a larger unit, measuring approximately 10 by 15 feet."  *See id.* at  ¶ 32. "According to Evergreen, someone last accessed the [Redway Storage Unit] on November 9, [2019], at approximately 11:03 a.m."  *See id.* at ¶ 33.  "On November 8 and 9, pursuant to warrant, ATF Special Agents in New York were receiving GPS location data for a phone" that Defendant was known to use.  *See id.* (footnote omitted).  "According to that data, [Defendant's] phone was in Humboldt and Mendocino Counties, consistent with his visiting the [Redway Storage Unit] on November 8 and 9."  *See id.*  Finally, "on the morning of November 10[, 2019], a member of the California Highway Patrol, [who was conducting] surveillance outside [Defendant's] apartment in Willits, saw a truck parked outside that is registered to [Defendant]." *See id.*

Based on all the information that ATF Special Agent Withrow provided in his affidavit for a search warrant for the Redway Storage Unit, Magistrate Judge Illman's conclusion that there was probable cause to indicate that there was a fair probability that contraband or evidence

of a crime would be found in the Redway Storage Unit was well founded.  Therefore, the Court denies Defendant's motion to suppress the evidence that the ATF agents found when they searched the Redway Storage Unit.

### 4. Search of the devices that ATF agents recovered from the Redway Storage Unit

Since the Court finds that there was probable cause to search the Redway Storage Unit, the Court also finds that the warrant to search the devices recovered in that Unit was also supported by probable cause.  Therefore, the Court denies Defendant's motion to suppress the evidence that the ATF agents recovered from those devices.

In sum, despite Defendant's contention to the contrary, all of the search warrant affidavits at issue in this case included sufficient facts to support the magistrate judges' findings that probable cause existed to search (1) the East Greenbush residence, (2) the East Greenbush Storage Unit, (3) the Redway Storage Unit, and (4) the devices that ATF agents recovered as a result of their search of the Redway Storage Unit.  Each of the affidavits showed that Defendant was engaged in a pattern of continuing criminal activity, *i.e.*, the purchase of firearms parts, ammunition and related items from several online retailers and was having them shipped to several locations, including the residence in East Greenbush, Willits, California, and a UPS box in Providence, Rhode Island, over the course of 26 months, and, thus, the information about those activities contained in the sworn affidavits was not stale.

### C.    The good-faith exception

Alternatively, the Court concludes that, based on the affidavits at issue in this case,

even if the magistrate judges had erroneously found that probable cause existed for the four searches – which they did not – the good faith exception to the exclusionary rule would apply and, therefore, denial of Defendant's motion to suppress the evidence recovered as a result of the four searches would be warranted on this basis as well.

"This [good faith] exception to the exclusionary rule recognizes that 'the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity."'" *Mouzon*, 2016 WL 7188150, at *3 (quoting [*Canceimo*, 64 F.3d at 807] (quoting *Leon*, 468 U.S. at 919)) (other citation omitted).  Although it is the Government's burden to demonstrate "'the objective reasonableness of . . . officers' good faith reliance' on a warrant that is subsequently invalidated, 'a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" *Id.* at *8 (quoting *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (internal quotation marks omitted)).  "The test of 'objective good faith' asks "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *Leon*, 468 U.S. at 922 n.23).  "The standard is not met '(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.'" *Id.* (quoting *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)).  A search warrant is not facially deficient unless it "'fail[s] . . . to particularize the place to be searched or the things to be seized' such that the officers could not 'reasonably presume it to be valid.'" *Id.* at *9 (quoting [*Leon*, 468 U.S.] at 923).

Defendant argues that this exception does not apply in this case because the warrants in question were "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *See* Dkt. No. 20-1 at 14 (quoting *Leon*, [468 U.S.] at 923).  Specifically, Defendant contends that the ATF agents could not rely in good faith on the initial search warrant based on the fact that Defendant previously resided at the East Greenbush residence and perhaps occasionally visited his children there and when the last shipment of firearms parts to the property occurred five and one-half months before the warrant was issued.  *See id.*  Finally, he contends that this same rationale applies to the later search warrants, *i.e.*, a connection between the property to be searched and Defendant with no probable cause to indicate the sought firearms parts were currently on or in the property to be searched.  *See id.*

Defendant overlooks the detailed facts set forth in each of the affidavits and understates the connection between Defendant and the places that the ATF agents sought to search.  For example, although Defendant no longer resided at the East Greenbush residence at the time that the agents sought the warrant, he visited there on a regular basis, still received mail at that location, had, one month before the search, requested that the UPS store in Providence, Rhode Island, forward his mail to that residence, and, although the last shipment of firearms parts to the East Greenbush residence was five and one-half months before the search warrant was sought, that period of time did not make the evidence stale given that firearms parts are often kept in a person's residence for a significant period of time and that Defendant had been engaging in a continuing course of criminal conduct for approximately 26 months.

Likewise, with regard to the East Greenbush Storage Unit, Defendant visited the area on a regular basis, had several orders sent to the East Greenbush residence although most of those items were not found at the East Greenbush residence, and had rented the East Greenbush

Storage Unit a mere two months prior to the request for the search warrant, despite the fact that there was ample storage space available at the East Greenbush residence, which was less than one mile from the storage unit.

Finally, with regard to the Redway Storage Unit, Defendant had several shipments sent to his California address, had recently rented this larger storage unit, and had been arrested in Arizona, where he was found with two guns in his truck two days prior to the request for the warrant, and had been in the area of the Redway Storage Unit a couple of days before he was arrested for possession of those firearms. Thus, it was reasonable for the ATF agents to believe that the items they sought to seize would be in that storage unit.

## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to suppress evidence obtained from the four searches addressed herein, *see* Dkt. No. 20, is **DENIED**.

**IT IS SO ORDERED.**

Dated: April  28, 2021
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge