IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) Criminal No. ) ) | 1:19-CR-420 (FJS) 1:21-CR-212 (FJS) 1:21-CR-219 (FJS) |
| v. | ) ) ) | |
| **JONATHAN M. CUNEY,** | ) ) ) | |
| **Defendant.** | ) | |

**United States' Sentencing Memorandum**

The United States of America, through the United States Attorney for the Northern District of New York, respectfully requests that the Court sentence the defendant to a 63-month term of imprisonment to be followed by the maximum 3 years of supervised release.

On June 15, 2021, pursuant to three plea agreements, the defendant pled guilty to felon in possession charges brought in the Northern District of New York, the Western District of Missouri, and the District of Arizona, respectively.

The defendant is scheduled to be sentenced on December 2, 2021. He has been continuously in custody since his arrest in Arizona on November 12, 2019.

1. **Factual Background**

The Government adopts the facts as set forth in the Presentence Investigation Report ("PSIR," dkt. no. 39 in Case No. 19-CR-420 (FJS)) prepared by the United States Probation Office. *See* PSIR ¶¶ 2-3, 6-7, 10, 15-36.

In the case originating from this Court, the defendant pled guilty to unlawfully possessing, as a felon, a Springfield Armory rifle and an FMK Firearms Inc. AR-15-style rifle receiver/frame,

and to possessing three unregistered silencers, between September 9, 2019 and November 14, 2019. The defendant also pled guilty to unlawfully possessing, on September 17, 2019, in Columbia, Missouri, several thousand rounds of ammunition that he purchased at a firearms store through a straw purchaser. He also pled guilty to unlawfully possessing, on November 12, 2019, near Tucson, Arizona, a pistol and a rifle, which were discovered during a traffic stop of a vehicle that the defendant was driving.

In pleading guilty, the defendant also admitted that from at least August 2018 until November 12, 2019, he purchased firearms parts from several dozen online retailers, and had these items shipped to East Greenbush, New York; Willits, California (where he maintained a residence); and Providence, Rhode Island (where he formerly maintained a legitimate firearms business). The defendant then used these firearms parts to manufacture non-serialized handguns, rifles, and silencers. These firearms are often called "ghost guns" because they do not have serial numbers, making them more difficult for law enforcement to trace.

ATF searched the defendant's East Greenbush storage unit on November 14, 2019, and found it to contain, among other items:

- Two (2) rifles,
- One (1) revolver,
- Four (4) serialized AR-15-style rifle receivers/frames,
- Two (2) completed "ghost guns,"
- Five (5) pistol parts kits,
- Two (2) completed silencers and enough parts to build more than ten (10) silencers,
- An assorted quantity of firearm parts and accessories, of which five (5) are classified as machineguns under federal law, and

- 3,250 rounds of assorted rifle and pistol ammunition.

The defendant also rented a storage unit in Redway, Humboldt County, California.  ATF searched this storage unit on November 20, 2019, and found it to contain, among other items:

- Two (2) Glock pistols,
- Seven (7) additional handguns,
- Three (3) rifles,
- One (1) shotgun,
- Five (5) machinegun conversion kits,
- More than ten (10) silencers, and
- More than 1,000 rounds of assorted rifle and handgun ammunition.

As part of his plea agreement, the defendant also agreed to abandon a variety of firearms, silencers, ammunition and firearm parts found in both East Greenbush and Redway, California, as well as the following items, all found in Redway: one pair of handcuffs with key; 56 Monadnock disposable single cuffs; and clothing items, patches and badges bearing law enforcement acronyms and insignia, including a Federal Bureau of Investigation (FBI) ball cap, FBI badges, FBI patches, Drug Enforcement Administration (DEA) patches, and DEA badges.

**2.    Statutory Maximum Punishment**

Maximum term of imprisonment: 10 years, pursuant to 18 U.S.C. § 924(a)(2).

Maximum fine: $250,000, pursuant to 18 U.S.C. § 3571(b)(3).

Supervised release term: the court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment.  See 18 U.S.C. § 3583.

3.  **Guidelines Calculation and Range**

    3.1  **Criminal History Category**

    The Government adopts the PSIR's conclusion that the defendant's criminal history category is II. PSIR ¶¶ 55-63.

    3.2  **Offense Level**

    The Government adopts the Sentencing Guidelines offense level calculation set forth in the PSIR, resulting in a total, adjusted offense level of 23. *See* PSIR ¶¶ 43-54. Of note, the various offenses, to which the defendant pled guilty, were grouped for offense level computation purposes. PSIR ¶ 44.

    3.3  **Guidelines Range**

    The Sentencing Guidelines advise a term of imprisonment of 51 to 63 months. PSIR ¶ 109.

    In his Northern District of New York plea agreement, the defendant has agreed not to appeal any term of imprisonment that is 97 months or less. PSIR ¶ 5.

4.  **Sentencing Recommendation**

    The Government respectfully asks the Court to sentence the defendant to a 63-month term of imprisonment, to be followed by the maximum 3 years of supervised release with the recommended special conditions of supervision.

    A term of imprisonment at the high end of the Guidelines range, to be followed by 3 years of supervision with the special conditions proposed by Probation, would be sufficient and not greater than necessary to achieve the goals set out in 18 U.S.C. § 3553(a), including the need for the sentence to reflect the nature, circumstances and seriousness of the offenses, and the history and characteristics of the defendant; the need to punish the defendant; the need to promote respect

for the rule of law and protect the community; and the need for the defendant to participate in mental health treatment, alcohol abuse treatment, and substance abuse treatment.

The defendant has a number of positive qualities. He is smart, personable and passionate. He is well-educated. And he served with honor in the United States Marine Corps, including a 7-month combat deployment to Iraq. PSIR ¶ 96. But the defendant has no interest in obeying the law, and he has a recent history of flouting criminal prohibitions and deceiving the Court.

The defendant became a felon because of firearms-related conduct. In December 2015, he pled guilty, in the United States District Court for the Southern District of New York, to transporting and selling firearms with obliterated serial numbers while he was a licensed firearms dealer in 2013 and 2014. PSIR ¶ 60. The defendant demonstrated that he lacked a moral compass when it came to selling firearms. The defendant was sentenced to 37 months in prison. This first felony conviction, and relatively light prison sentence, should have been a "wake-up call" and caused the defendant to focus on his family, a suitable career, and his well-being.

But, upon returning to East Greenbush in April 2017, the defendant renewed his (now-illegal) infatuation with firearms. Starting in May 2017, and while on supervised release, he began ordering firearm component parts online, and began building "ghost guns." PSIR ¶ 20. In April 2018, he petitioned United States District Judge Mae A. D'Agostino for early release from supervision, falsely assuring her that he no longer needed therapy for post-traumatic stress disorder (PTSD), and that he had achieved "peace of mind from being with my family, learning, and being outdoors." *See* Exhibit 1. Judge D'Agostino granted the defendant's motion for termination of supervision. PSIR ¶ 17.

No longer under Probation supervision, the defendant then ramped up his purchases of firearms parts, and began behaving irresponsibly and criminally – e.g., by physically abandoning

his young family in East Greenbush, taking up a peripatetic lifestyle in which he resided in California, Missouri and Wyoming, and illegally stockpiling arms in Humboldt County, California (the epicenter of the country's marijuana industry) and New York.  See PSIR ¶¶ 18-32, 69.  Nothing good was going to come from the defendant's caches of arms, which included not only "ghost guns," handguns and rifles, but also silencers, handcuffs, and federal and state law enforcement paraphernalia.

The defendant also joined the Proud Boys in late 2018, receiving, as an initiation into the group, a tattoo depicting an eagle with a beer and a rifle in its talons (of note, the defendant's only other tattoos relate to his military service).[1]  PSIR ¶ 76.  The defendant describes his involvement with the Proud Boys as limited to:

> 'hanging out with the boys at bars' and 'talking about politics' in the Troy and Schenectady areas.  He denied having engaged in any violent acts or protests as part of the group, and noted as the Proud Boys became increasingly racist and violent, that motivated him to step away from the group, noting his own Hispanic heritage."

PSIR ¶ 42.  This statement ignores, first, that the Proud Boys were notorious for hateful acts and demonstrations a t the time the defendant joined the group; and, second, that the group has Hispanic members, most prominently its leader, Enrique Tarrio.  And there is no indication, beyond the defendant's self-serving statement, that he actually left the group, ever.

---

[1] The Proud Boys is a hate group founded in 2016, according to the Southern Poverty Law Center.  See Proud Boys, available at https://www.splcenter.org/fighting-hate/extremist-files/group/proud-boys (last visited November 29, 2021).

The Proud Boys group is most infamous for helping to lead the violent insurrection at the Capitol on January 6, 2021 (when the defendant was, obviously, in jail).  See, e.g., Individuals Associated with Proud Boys Charged with Conspiring to Obstruct an Official Proceeding and Interfering with Law Enforcement, and Other Charges Related to the Jan. 6 Riots, available at https://www.justice.gov/usao-dc/pr/individuals-associated-proud-boys-charged-conspiring-obstruct-official-proceeding-and (last visited November 29, 2021).

At bottom, the defendant seeks leniency on account of his military service, and the physical and mental ravages of war that he suffered and which remain with him.  No one doubts that the defendant fought bravely in Iraq and sacrificed a large part of himself in the process.  But his request for leniency, and his claim that his criminal conduct was driven by his PTSD, are baseless.  The defendant's PTSD and military service do not explain, nor justify, his repeated and brazen flouting of firearms laws, first in 2013 and 2014, and again in 2017 and 2018; and his deception of the Court in April 2018, leading to the early termination of his supervised release and the current predicament in which the defendant finds himself.

The defendant is an unapologetic criminal hiding behind his military service record.  He is smart and capable, with ample reason to do the right thing.  But, because he has repeatedly and flagrantly violated the law, despite the capacity and incentive to be a better man, the Court should impose a term of imprisonment at the high end of the Sentencing Guidelines range.

*** 

The United States reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum.  Similarly, if the Court is considering a *sua sponte* departure from the applicable Guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond.  *See* Fed R. Crim. P. 32(h), (i)(1)(c).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

/

/

Respectfully submitted this 29th day of November, 2021.

                                             CARLA B. FREEDMAN
                                             United States Attorney

                                             By: ***/s/ Michael Barnett***
                                             Michael Barnett
                                             Assistant United States Attorney
                                             Bar Roll No. 519140

# Exhibit 1

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

MAY 1 6 2018

LAWRENCE K. BAERMAN, CLERK
ALBANY

13 April 2018

Hon. Mae D'Agostino
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Your Honor,

I hope this letter finds you well and you had a wonderful Mother's Day. This letter is in regards to Case# 1:17-CR-215, Jonathan M. Cuney, and my previous request to be released from Supervised Release early.

It has been brought to my attention you are seeking records on my Post Traumatic Stress Disorder and my treatment for this condition. I have signed a release of information for the Veterans Administration however they do not hold all of my records. Unfortunately as you may be aware, the VA is very backlogged and appointments for mental health are usually scheduled 3-6 months apart at best. I was seen at the VA by an intern, which was all I was able to be offered. In order to satisfy the courts order I met with him once monthly for approximately 3-4 months. I also met monthly with Capital Counseling following the VA appointments for another 3-4 months until they deemed therapy no longer needed.

With an hour commute each way to school 5 days a week, a new baby and the hours of the VA being 9-5, coupled with the fact I was unable to meet with an actual psychiatrist the VA became a less than perfect treatment option. Capital Counseling became the best alternative and I continued treatment there. I was seen nearly 8 months out of the year with only several missed months due to the birth of my child, finals, midterms, or on one occasion my counselor not being able to make our appointment. I have also been seen by Pearl Street Counseling Center. I tried but was unable to gain access to these records from the other treatment centers. I wanted to make you aware they do exist your honor.

Capital Counseling wrote me a letter of release in regards to my PTSD and thought therapy was no longer needed for the condition. I have NEVER been suicidal, homicidal or mentally unstable due to this condition. I am on a host of medications for physical disabilities but only one deemed psychological which is for sleep. I suffer from nightmares and sleep disturbances as a byproduct of my PTSD. I hope this condition doesn't reduce my chances of release your honor as it was obtained through my service in the United States military during one of the bloodiest battles the US has faced since 1968. I witnessed the death of nearly 2 dozen close personal friends, was wounded myself in battle, and saw death and destruction on a large scale. I do suffer from PTSD, as well as traumatic brain injury, spinal injury, nerve damage, gastro intestinal and digestive issues caused from anthrax exposure, neck, leg shrapnel wounds and although all these conditions were from my service to my country none of the handicaps I have make me a danger to myself or anyone else. I find my peace of mind from being with my family, learning, and being outdoors I hope these conditions would not disqualify me for release as I have been receiving treatment for years and have been written a letter of release in regards to them.

Thank you again for your consideration
Respectfully,

Jonathan Cuney
(518) 657-1377 M
Cuneyj658@cobleskill.edu