UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NOS: 1:19-CR-420-FJS |
| V.                                              : | 1:21-CR-212-FJS |
| : | 1:21-CR-219-FJS |
| JONATHAN CUNEY                      : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Jonathan Cuney, by and through counsel, submits this memorandum to aid the Court with imposing a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Mr. Cuney requests a sentence of time served followed by a period of supervised release.

**I.   BACKGROUND AND SUMMARY**

On October 29, 2019, the government filed a criminal complaint against Mr. Cuney in U.S. District Court for the Western District of Missouri alleging Felon in Possession of Ammunition.[1] This charge was based on information authorities received that Mr. Cuney picked up orders of both ammunition and firearms parts on at least two occasions in Columbia, Missouri.[2] A warrant issued for his arrest based on this complaint.

On November 12, 2019, authorities arrested Mr. Cuney in the District of Arizona.[3] He was the subject of a motor vehicle stop and arrested pursuant to the aforementioned arrest warrant.[4] Because one pistol and one rifle were discovered during a search of the vehicle he was operating, a second criminal complaint issued against him in U.S. District Court for the District of Arizona alleging Felon in Possession of a Firearm.

---

[1] PSR, ¶.23.
[2] PSR, ¶.22.
[3] PSR, ¶.13.
[4] *Id.*

On November 12, 2019, and November 14, 2019, authorities executed search warrants at Mr. Cuney's address and storage facility, respectfully, that he maintained in the Northern District of New York. Both searches yielded the discovery of numerous firearms, firearms parts, ammunition, and related accessories.[5] These discoveries led to the filing of a criminal complaint against Mr. Cuney in U.S. District Court for the Northern District of New York alleging Felon in Possession of a Firearm and Possession of Unregistered Firearms.

As time passed Mr. Cuney consented to transfer jurisdiction of the Arizona and Missouri charges to this District. Mr. Cuney also consented to his pretrial detention throughout the pendency of these matters, never exercising his right to a detention hearing.

On June 15, 2021, pursuant to a plea agreement he reached with the government, Mr. Cuney pleaded guilty to five offenses transcending three charging instruments in three separate federal districts. First, he pled guilty to a three-count Criminal Information filed in this Court, which charged two counts of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922 (g)(1) and 924(a)(2) and (3) one count of Possession of Unregistered Firearms in violation of 26 U.S.C. §§ 5861 (d), 5871, 5845 (a)(7) and 18 U.S.C. § 921 (a)(24).[6]

Second, Mr. Cuney admitted guilt to a one-count Indictment in <u>United States v. Jonathan Cuney</u>, Docket No. 2:19-CR-04094-001 initially filed in U.S. District Court for the Western District of Missouri (assigned local docket number DNYN 1:21CR00212-001), which alleged Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922 (g)(1) and 924 (a)(2).[7]

Third and lastly, he admitted guilt to a one-count Indictment in <u>United States v. Jonathan Cuney</u>, Docket No. 4:19-CR-03124-001 initially filed in U.S. District Court for the District of

---

[5] PSR, ¶.29.
[6] PSR, ¶.1.
[7] *Id.*

Arizona (assigned local docket number DNYN 1:21CR00219-001[8]), which alleged Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922 (g)(1) and 924(a)(2). In summary, he pled to four counts of felon in possession of either firearms or ammunition and one count of possessing an unregistered firearm (i.e., silencer).

U.S. Probation issued its final presentence report (PSR) related to this case on November 9, 2021. The Defense has no objections to the final PSR. Mr. Cuney is scheduled to appear for his sentencing hearing on Thursday, December 2, 2021, at 10 AM.

## II.   SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005). Sentencing should begin with a calculation of the applicable sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration. *Id.*

A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case. *Gall,* 128 S. Ct. at 597 (emphasis added). After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[9] of 18 U.S.C.

---

[8] PSR, ¶.1.
[9] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed:
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and

§ 3553 (a) to determine the most appropriate sentence for the instant case. *Id*. As such, Mr. Cuney asks the Court to impose a sentence of time served. The Defense specifically asks the Court to consider the following information when fashioning an appropriate sentence.

**(1) The Nature and Circumstances of the Offense**

Mr. Cuney makes no effort to marginalize the seriousness of his admitted misconduct. However, he asks the Court to consider the background and circumstances that led to his most recent misconduct of unlawfully possessing firearms and ammunition. Mr. Cuney has been around and involved with firearms for most of his life. He formerly worked at a gun shop as an adolescent and was raised around guns, to include hunting and shooting for sport. He furthered his involvement with firearms during his military service in the U.S. Marine Corps (USMC), which included a combat deployment to Iraq. After eight years on active duty, Mr. Cuney became involved with selling firearms for various well-known firearms manufacturers before he ultimately obtained his own FFL and started his own business. As a former Federal Firearms License (FFL) holder, he was authorized to manufacture, import, and sell firearms.

On December 22, 2015, Mr. Cuney was sentenced to 37 months of incarceration and 2 years of supervised release following a guilty plea to transporting and selling firearms with obliterated serial numbers.[10] In that case, Mr. Cuney breached the trust placed in him as an FFL holder by obliterating serial numbers on firearms and unlawfully selling them on the street.

---

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
(5) any pertinent policy statement issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

[10] PSR, ¶.16; *United States v. Johnathan Cuney*, Docket No. 7:15-CR-00143 (S.D.N.Y).

4

Some of these weapons fell into the wrong hands and were subsequently recovered during criminal investigations related to shootings and gang-related activity.  Once apprehended, Mr. Cuney was fully cooperative with the government during its investigation and prosecution of his misconduct.  He voluntarily disclosed the locations of his firearms and ammunition and consented to various searches, that led to the seizure of his collection.

In the instant case, Mr. Cuney was not involved with illegally selling firearms.  Though he reoffended through the admitted possessory offenses, he vehemently denies any suggestion that he distributed or intended to distribute firearms to others.  Further, there is no evidence to prove otherwise.  Instead, Mr. Cuney was stockpiling his ammunition and firearms parts, for his own doomsday preparations.  He also used the parts to manufacture firearms, to include both pistols and rifles.  Though his actions violated the law, Mr. Cuney wrongfully believed that his actions were lawful.

The defendant, a well-read individual, came across the decisions of *United States v. Bass*[11] and *United States v. Jimenez*.[12]  *Bass* stands for the proposition that a firearm or ammunition must affect interstate commerce in order to run afoul of federal law.  Mr. Cuney believed that by purchasing firearms parts, building them in one jurisdiction, and not taking them across state lines, that his actions were permissible.  The case evidence established that Mr. Cuney ordered firearms parts and related materials online, had them shipping to various states, maintained the items in certain states, where he either built or intended to build firearms, but did not transport them across state lines.

*Jimenez* discusses whether certain components to an AR-15 rifle meet the federal definition of a machine gun, specifically, the lower receiver.  There the Court dismissed an

---

[11] 404 U.S. 336 (1971).
[12] 191 F.Supp.3d 1038.

indictment charging possession of a machinegun (based on possessing receivers) on the basis the definition is constitutionally vague, as applied to the AR-15 receivers. This decision also influenced Mr. Cuney's actions.

For the most part, the firearms seized by the government in the instant case were all discovered in storage facilities under lock and key. The items discovered in his vehicle at the time of his arrest were unloaded and concealed inside of a trunk. There is no evidence that Mr. Cuney used these weapons for an unlawful purpose or providing them to others. His crimes of conviction are mere possessory offenses, influenced by a lifelong passion for guns and apparent misinformation about the law, opposed to a sinister motive to promote criminal activity or violence. He asks the Court to consider these facts when imposing his sentence.

**(2) History and Characteristics of Mr. Cuney**

Mr. Cuney is age 38 and has four (4) children: Genevieve (age 1), John (age 4), Jacob (age 11) and Lavinia (age 14). All of his children live with their respective mothers. Due to his incarceration, Mr. Cuney has not seen any of his children since his arrest more than two years ago. His last memory of the kids is taking them out for Halloween in October 2019. He also has not physically met or held his newest daughter, Genevieve, who is almost age 2.

Mr. Cuney was born and raised in New Paltz, New York. His father, George Cuney, age 67, is a construction contractor and lives in Port Ewen, New York.[13] George suffered a stroke during Mr. Cuney's recent pretrial custody and is in poor health. His mother, Debbie Sifre, resides in New Paltz and is employed as a property manager.[14] Mr. Cuney's parents are divorced, however, he maintains a strong relationship with both of them. Mr. Cuney is the oldest of two (2) children. His sister, Amanda Lopez, is age 33 and is married with children. She owns

---

[13] PSR, ¶.68.
[14] Id.

and operates her own yoga studio.[15] Mr. Cuney's family members are all aware of his pending legal circumstances. Though they are gravely disappointed in both his actions and reincarceration, they remain supportive of him during this difficult time.

Mr. Cuney left upstate New York after graduating high school in order to join the military. He enlisted into the USMC through its Delayed Entry Program in 2000. This is a program where high school seniors, with their parents' permission, enlist in the military with plans to attend basic training after graduation. Mr. Cuney followed through on this plan.

He served on active duty in the USMC for approximately eight (8) years. While in the Marines, he successfully completed multiple training courses.[16] He also deployed to Iraq in support of the nation's War on Terror. He participated in direct combat operations in Operation Iraqi Freedom (OIF), to include the infamous Battle of Fallujah. This particular battle is regarded as the bloodiest day of battle in the War on Terror and was the fiercest ground fight involving U.S. forces since Hue, Vietnam in 1968.[17]

Mr. Cuney was awarded the Purple Heart for injuries sustained in combat. He and his fellow Marines were occupying and defending a small building while engaged in small arms fire with enemy combatants. An enemy insurgent tossed a hand grenade through an open window and into the building. Mr. Cuney spotted the grenade, warned his fellow Marines, and attempted

---

[15] *Id.*
[16] Delayed Entry Program Certificate; AAA Driver Improvement Program; High Mobility Multipurpose Wheeled Vehicle Course; United States Marine Corps Basic Security Guard Course; United States Marine Corps Security Guard Orientation Course; Mighty Guardian V Force-on-Force Exercise Certificate of Commendation; Military Operations in Urban Terrain Course; Operations Against Guerrilla Units Course; Infantry Patrolling Course; Terrorism Awareness for Marines Course; Desert Operations Course; The Marine Rifleman Course: Combat Skills Course; Landmine Warfare Course; Reconnaissance Marine Course; Improvised Explosive Device (IED) Task Force (Army) Course; Terminal Area Security Officer Course; Threat Analysis Course; Weapons Course; The Heavy Machinegun Crewman Course; Base Perimeter Defense (Army) Course; Combating Trafficking in Persons Course; Conduct Presence Patrols (Army) Course; NMITC – Targeting Course; Conduct Escort of a Convoy (Army) Course; Stability and Support Operations Course; Introduction to Warfighting Course; Warfighting Techniques Course; and Weapons Course.
[17] Jonathan Cuney, *Operation Phantom Fury / AL-FAJR*, Soldier of Fortune, Oct 2012, at 42.

to clear the area. An insurgent fired a machine gun in Mr. Cuney's direction, thwarting his efforts to escape the grenade's blast zone. The grenade detonated propelling Mr. Cuney down a flight of stairs and causing him to sustain a shrapnel, flesh wound and a variety of other soft tissue injuries. He received a number of awards and accolades for his military service.[18] He ultimately left the USMC with an Honorable Discharge in 2008.

Mr. Cuney was awarded a 100% disability rating through the Veterans Administration (VA) for military service-connected injuries. These injuries were predominantly the result of his combat service and wounds sustained in Iraq. This rating consists of the following injuries: 10% for tinnitus; 10% for chronic lumbar strain; 10% for chronic cervical strain superimposed on degenerative disk disease; 10% for chronic knee pain; 10% left foot scar, post shrapnel wound; and 50% for post-traumatic stress disorder (PTSD).

After leaving the USMC, Mr. Cuney took the training and experience that he received from the military to pursue a civilian career in firearms. Aside from working for and starting his own firearms businesses, Mr. Cuney underwent a number of firearms-related training programs to further his knowledge in the field.[19] They included various firearms manufacturer courses,

---

[18] United States Marine Corps Certificate of Good Conduct; United States Marine Corps Certificate of Achievement; Letter of Appreciation; Commanding Officer Progress Letter; United States Marine Corps Promotion to Sergeant; Purple Heart Awards; Combat Action Ribbon; Navy Unit Citation; National Defense Medal; Global War on Terrorism; Sea Service Deployment Ribbon; Rifle Expert Badge; Pistol Marksman Badge; State of New York Conspicuous Service; Honorable Discharge Certificate; Disabled American Veterans Appreciation.

[19] NRA Certified Instructor; NRA Chief Ranger Safety Officer; NRA Personal Protection Course Certification; Concealed Weapon Course for the State of Nevada; Concealed Weapon Course for the State of Utah; NRA Home Firearm Safety Course Certification; NRA Certified Life Member; Armed Security Guard Training Certificate; International Federation of Red Cross and Red Crescent Societies Stay Safe Managers Course Certification; HK USP Conversion and Upgrade Course Certification; Glock Professional Armorer's Course Certification; Glock Professional Armorer's Course; Peace Operations Training Institute United Nations Police: Restoring Civil Order Following Hostilities Certificate of Completion; Peace Operations Training Institute Peacekeeping and International Conflict Resolution; Peace Operations Training Institute Logistical Support to the UN Peacekeeping Operations; and Commonwealth of Massachusetts County of Worcester Reserve Deputy Sheriff Program.

safety programs, instruction programs, firearm concealed carry programs, and armed security guard training programs.

Mr. Cuney was a well-known and well-respected member of the firearms industry before he strayed from this lawful career path by selling several firearms with defaced serial numbers to an undercover law enforcement officer.  Based on his admitted misconduct in 2015, his career in the firearms industry ended.   He no longer enjoys the reputation he once had, and moreover.

Once released from his last term of incarceration, Mr. Cuney returned to college and nearly completed his Bachelor's Degree at SUNY Cobleskill.  He also started a small private security consulting business.  He asks the Court to take into consideration these collective facts and circumstances when adjudging sentence.

**(3) <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense.</u>**

The Defense concedes that a period of incarceration is warranted for his admitted actions.  By the time Mr. Cuney is sentenced, he will have already served approximately 24 months in jail.  When considering the conditions under which he has been confined and is health status (both of which are further discussed below), Mr. Cuney asks the Court to consider ordering his release, or alternatively, allowing him to transition back into the community while under home detention.  He avers that additional time behind bars, removed from the community and his family, is necessary to reflect the seriousness of his admitted possessory offenses.

**(4) <u>Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.</u>**

When considering this multi-part sentencing factor, Mr. Cuney believes that a sentence of time served is sufficient, but not greater than necessary, to achieve these federal sentencing objectives.   Protection of the public is not a particular sentencing objective that warrants significant consideration in this case.  Mr. Cuney is not accused of having committed a crime of

violence. He is also not known to have a reputation or character for violence. Further, as stated above, Mr. Cuney had admitted to possessory firearms offenses. He was not actively distributing firearms, and never informed any intention of doing so, opposed to his admitted conduct of the past.

In terms of punishment, Mr. Cuney has spent more than two years confined, all throughout the COVID-19 pandemic during arduous conditions. He also has a daughter he has yet to meet. This has been adequate punishment for his actions. Mr. Cuney respects the law. He fought for this country, to defend its many constitutional principles, which include due process and the rule of law. Mr. Cuney also believes his actions in this case, opposed to his crimes of the past, were within the letter of the law. He was mistaken and has learned his lesson! Based on these facts and circumstances, Mr. Cuney does not believe that this multi-part sentencing factor justifies imposition of any more time in jail.

**(5) Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

Mr. Cuney avers that a lengthy jail sentence is not required to provide him with any education or vocational training, medical care, or other correctional treatment. Mr. Cuney is college-educated. He also has a significant amount of leadership, planning, execution, and managerial experience that he acquired in the military. This will make him competitive for employment upon his release. Lastly, there is an opportunity for Mr. Cuney to begin working in and learning his father's development business. Because of George Cuney's health condition, he could use the help, and who better than his only son. If this does not work out, Mr. Cuney has expressed an interest in furthering his education by attending law school. He has done a significant amount of reading while in pretrial custody and seems intently focused on pursuing this avenue, upon completing his degree.

In terms of medical care, Mr. Cuney clearly suffers from a number of conditions for which he receives VA disability benefits, all of which are described above.  The best care for his service-connected injuries is available through the VA as opposed to the Bureau of Prisons (BOP).  The specialized and quality of care provided by the VA is not available within the BOP and has certainly not been afforded to Mr. Cuney during his pretrial incarceration.

Further, Mr. Cuney wants the Court to know that since approximately his change of plea hearing, he has been housed in a medical, locked down unit at his pretrial confinement facility.  He also recently fell in the shower at the jail, prompting corrections officials to transport him to a local emergency room.  He has a herniated disc in his back and resulting sciatic nerve damage in both his leg and back.  Mr. Cuney asks the Court to consider a sentence of time served so that he may, among other things, reconnect with the VA and get the proper care and treatment needed for his existing conditions.

**(6) Incarcerated During COVID-19**

Mr. Cuney has remained incarcerated since October 2018.  The past 24 months of incarceration for him, from November 2019 to present time, have been during the COVID-19 pandemic.  Life behind bars during this period was particularly arduous.  Beginning in March 2020, the facility where Mr. Cuney is housed cancelled all detainee programming related to religion, education, and mental health.  At time, all inmates were locked in for considerable period of time with no access to phones, showers, and more.  Conditions Mr. Cuney recalls being locked down in solitary confinement for COVID-19 precautionary reasons for approximately six weeks, with 15 minutes outside to shower.  Conditions improved marginally during the spring and summer months of 2020, but in January 2021, the facility went back into lockdown, again restricting showers, shaving, haircuts, visitation, religion, exercise, educational services, and mental health counseling (See Attachment H).

In addition to the enduring the aforementioned conditions, Mr. Cuney contracted the corona virus while incarcerated and experienced symptoms such as fever, excruciating migraines, vomiting, diarrhea, and loss of his senses to taste and to smell. Since getting COVID-19, Mr. Cuney was diagnosed with COVID Long Haul Syndrome. Sanitary conditions in the units were also less than ideal. Inmates were forced to share showers, hot water dispensers, and other facilities without cleaning or disinfecting in between uses. Social distancing was neither implemented nor enforced, and many inmates refused to wear masks. Albany County Correctional Facility also did not provide the inmates with adequate cleaning supplies. The facility also did not serve or offer hot meals for long periods of time and legal calls, receipt of mail, and property requests were inconsistent. Needless to say, these conditions fell considerably short of the minimum standards that any confinement facility should adhere to when charged with the health, welfare, and safety of inmates. Mr. Cuney asks the Court to consider these particularly hard times into considering when fashioning his sentence.[20]

### III.     RESPONSE TO GOVERNMENT'S MEMO

The government in its memo argues that Mr. Cuney hides behind his military service. Mr. Cuney is proud of his service in the USMS. Unlike his lawyer who spent his time overseas behind a desk fighting legal battles with words in a courtroom, Mr. Cuney was engaged in direct enemy combat, witnesses the loss of American lives, and sustained his own injuries. Military service comes in all forms. Mr. Cuney, however, left his own blood on the battlefield in Iraq.

---

[20] In the matter of *United States v. Esperitusanto*, Case No. 19-CR-10136-ADB, on January 29, 2021, the Honorable Allison D. Burroughs in the District of Massachsuetts sentenced a Defendant, who had spent 23 months in pretrial custody at the Wyatt, to 33 months of incarceration where the applicable advisory guidelines range was 46 to 57 months. The Court imposed the 13-point variance, or 28% discount from the bottom end of the range because the Defendant both contracted COVID-19 and spent time incarcerated during the pandemic, under arduous and extraordinarily restrictive conditions.

When the Court assesses a defendant's individual history and characteristics, his military service should absolutely be taken into consideration.

The government also argues that Mr. Cuney deceived the Court, when seeking early termination of his supervised release, that he did not need treatment for his PTSD any longer. Mr. Cuney was communicating to the Court that a provider had released from his treatment, and that he hoped the then-unavailability of certain treatment records the judge had requested would not prejudice his request for early termination.   Based on the Exhibit 1 appended to the government's memo, a letter authored by Mr. Cuney, there appears to be no evidence of deception.   Government counsel appears to overreach with that particular argument.

### IV.     MISCELLANEOUS REQUESTS

If this Court decides to impose a term of incarceration beyond time served, Mr. Cuney asks the Court to recommend to the BOP that he be allowed to serve his jail sentence in FCI Otisville to afford him the opportunity to receive visitation from his family members.

### V.     ATTACHMENTS

A. Mr. Cuney's Statement to the Court;

B. Statements of Support;

C. Military Awards and Decorations;

D. Military Training Certificates;

E. Firearms and Related Training Certificates;

F. Articles;

G. Photos;

H. Letter from Albany County Sheriff's Office.

## VI.  CONCLUSION

Based upon the foregoing, Mr. Cuney respectfully asks the Court to impose a sentence of time served followed by a period of supervised release, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).  Should the Court conclude that additional confinement is warranted, he asks that he be placed on home detention, opposed to further detention in a jail or BOP facility.

Respectfully submitted this 30th day of November 2021.

Respectfully submitted,
Jonathan Cuney,
By Counsel,

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No.: 512512)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Third Floor
Providence, RI 02903
Phone:  (401) 351.5100
Fax:  (401) 351.5101
Email:  jc@calcagnilaw.com

## CERTIFICATION

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on November 30, 2021.

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No.: 512512)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Third Floor
Providence, RI 02903
Phone:  (401) 351.5100
Fax:  (401) 351.5101
Email:  jc@calcagnilaw.com